Tagged Opinion



**ORDERED in the Southern District of Florida on December 19, 2007.**

                                                      Paul G. Hyman, Chief Judge
                                                     United States Bankruptcy Court

_____

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

In re:                                           Case No. 07-14699-BKC-PGH
**Brian Andrew Mulally,
and Shirley Aracelia Vega**,
    Debtors.
_____/

**ORDER SUSTAINING OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN AND
CANCELLING EVIDENTIARY HEARING**

     **THIS MATTER** came before the Court for hearing on October 24, 2007, upon Bank of America/FIA Card Services', formerly MBNA by eCAST Settlement Corporation as its agent,("Creditor"), *Objection to Confirmation of Chapter 13 Plan* ("Objection") (C.P.#33), wherein Creditor objected to Brain Andrew Mulally and Shirley Aracelia Vega (collectively "Debtors") proposed Chapter 13 Plan ("Plan")(C.P. #19) on the basis that it failed to include all of the Debtors' projected disposable income as required by 11 U.S.C. § 1325(b)(1)(B). The Objection also argued that Debtors use of

applicable expenses for a family of four on their means test was improper because it allegedly included expenses for the support and maintenance of Debtors' adult non-dependent children.

On November 20, 2007, Creditor filed an *Amended Objection to Confirmation of Chapter 13 Plan* ("Amended Objection")(C.P.#58) which objected to confirmation on the basis that Debtors failed to commit all of the their projected disposable income to the Plan. The Amended Objection did *not* object to the Debtors use of applicable expenses for a family of four on the means test. On December 6, 2007, Debtors filed a Brief in Opposition to Objection to Confirmation ("Response")(C.P. #60). On December 18, 2007, Creditor withdrew its original Objection. Thus, it is the Court's understanding that the Creditor no longer bases its objection to confirmation on the Debtors use of applicable expenses for a family of four on the means test.

## BACKGROUND

The facts of this matter are undisputed, and the following background information is based upon the parties' Joint Stipulation of Facts. The Debtors filed for Chapter 13 relief on June 19, 2007. The Debtors Official Form B22C: *Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income* ("Form B22C" or "Means Test")(C.P. #17) shows that the Debtors' annualized current monthly income ("CMI") is above the applicable median annual income for a family of four people

residing in Florida. Therefore, Debtors are above median income debtors and the applicable commitment period for the Debtors' Chapter 13 plan is five years pursuant to 11 U.S.C. § 1325(b)(4). As indicated on Form B22C, the Debtors' CMI is $6,486.77, and their total monthly expenses are $6,954.65. Thus, the Debtors' Form B22C monthly disposable income is *negative* $467.88 pursuant to 11 U.S.C. §1325(b)(2).

Debtors' Schedule "I" reports monthly net income of $6,563.56, and monthly gross income of $8,048.64, an amount that is higher than Debtors' CMI of $6,486.77. As defined in 11 U.S.C. § 101(10A), CMI is an historical figure that is calculated using all income received by a debtor during the six months preceding the calendar month of their Chapter 13 bankruptcy filing. Debtors attribute the difference between their income as reported in Schedule "I" and their CMI to joint Debtor Shirley Vega's new employment commenced during the month of June 2007. Debtors' Schedule "J" reports monthly expenses of $6,387.51. Debtors' Plan, based upon Debtors' Schedules "I" and "J", proposes to pay creditors $160.00 per month.

## CONCLUSIONS OF LAW

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

The Creditor, as the holder of an allowed unsecured claim who

is objecting to confirmation, argues that Debtors have failed to correctly calculate their projected disposable income, and therefore the Plan may not be confirmed because it does not provide that all of the Debtors' projected disposable income to be received in the applicable commitment period will be applied to make payments to unsecured creditors. 11 U.S.C. § 1325(b)(1)(B).

Debtors respond that their Means Test yields a negative disposable income figure, and that use of the Means Test to calculate Debtors' projected disposable income would result in a zero percent plan pursuant to which unsecured creditors would be paid nothing. Therefore, Debtors maintain that they have properly calculated their projected disposable income by deducting their actual Schedule "J" expenses, rather than their applicable Means Test expenses, from their Schedule "I" income. Debtors further argue that the Plan, using projected disposable income based upon Schedule "I" and "J", complies with 11 U.S.C. § 1325(a)(4), because it pays unsecured creditors more than they would receive under a Chapter 7 liquidation.

Creditor's Amended Objection maintains that Debtors have incorrectly calculated their projected disposable income. The Creditor does not dispute the use of Debtors' Schedule "I" to ascertain their income, but the Creditor does take issue with the use of Debtors' Schedule "J" expenses. The Amended Objection maintains that in calculating projected disposable income, the

4

above median income Debtors should use their Means Test expenses pursuant to Form B22C, rather than their actual Schedule "J" expenses. The Court agrees.

The Court recently reviewed the emerging body of case law regarding what constitutes "projected disposable income" in the context of an objection to confirmation of chapter 13 plan. *See* December 14, 2007, *Order Overruling Objection to Confirmation of Chapter 13 Plan*, *In re Sabrina Highey*, Case No. 07-12721-BKC-PGH. In that opinion, the Court voiced its agreement with the line of cases that determine that Form B22C is the starting point for determining projected disposable income. However, the Court found that to the extent a debtor's actual anticipated future income is different than a debtor's historical current monthly income, actual anticipated future income should be used to determine a debtor's payments in order to ensure that a debtor's Chapter 13 plan is feasible and capable of completion by the debtor. *See e.g., In re Kibbe*, 361 B.R. 302 (B.A.P. 1st Cir. 2007; *In re Lanning*, 2007 WL 1451999 (Bankr. D. Kan. May 15, 2007); *In re Arsenault*, 370 B.R. 845 (Bankr. M.D. Fla. 2007).

In this case, it is undisputed that use of the Debtors' actual Schedule "I" income - which includes joint Debtor Shirley Vega's new employment - is proper on the income side of the projected disposable income equation. However, under the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), while the income

5

side of the projected disposable income calculation incorporates increases or decreases in a debtor's future income, § 1325(b)(3) mandates that an above median income debtor's expenses "*shall be determined* in accordance with subparagraphs (A) and (B) of section 707(b)(2). . .".  11 U.S.C. § 1325(b)(3)(emphasis added). Section 707(b)(2)(A) provides the means test formula to determine whether it would be presumptively abusive to grant a particular debtor relief under Chapter 7.[1] Under the means test, the majority of an above median income debtor's expenses are determined using Internal Revenue Service national and local standards plus the Debtor's actual expenses for certain specified categories. Thus, § 1325(b)(3) directs that in calculating projected disposable income, an above median income debtor must use the same expenses that the debtor uses for completing the Form B22C means test.

The Court notes that the developing body of law regarding what constitutes "projected disposable income" embraces many differing opinions using varied approaches. Debtors cite *In re Plumb*, 373 B.R. 429 (Bankr. W.D.N.C. 2007), as authority for their argument that when a debtor's means test produces a negative monthly disposable income figure, it is appropriate to calculate projected disposable income using Schedules "I" and "J".  However, the facts

---

[1] In the absence of special circumstances, BAPCPA creates a presumption that it is abusive to grant Chapter 7 relief to an above median income debtor if under the means test the Debtor has sufficient disposable income over sixty months to pay the greater of 25% of the Debtors' nonpriority unsecured claims or $6,000.

6


of *Plumb* are quire different from the facts of this matter. Unlike the debtors in *Plumb*, the Debtors here have substantially more Schedule "I" income than their reported CMI. Thus, *Plumb* is unpersuasive to the Court as its analysis is not on point.

As stipulated by the parties here, the Debtors' gross income on Schedule "I" is $8,048.64. The expenses reasonably necessary to be expended pursuant to Debtors' Means Test, (Form B22C, Line 57) total $6,954.65. Having determined that it is appropriate to calculate Debtors' projected disposable income by subtracting Debtor's Means Test expenses from their Schedule "I" income, the Court finds that the difference of $1,093.99 is the Debtors' monthly projected disposable income that must be committed to the Plan during the applicable commitment period.[2]

Debtors' Response argues against the use of means test standard expenses, stating that "it is nonsensical to require debtors to use expenses which are not a true representation of what they actually spend per month." The Court notes however, that several policy rationales have been advanced to explain the mandate that above median income debtors use fixed national and local standard expenses applicable to the debtor's family size and geographic location. These policy rationales include judicial efficiency, reducing administrative complexity, removing judicial

---

[2] The Court notes that the Plan remains subject to modification under section 1329 if there is a change in either the Debtors' income or the Debtors' circumstances that would result in different expense calculations under section 707(b)(2).

discretion, relieving courts of the obligation to make subjective judgments regarding reasonable expenses, ensuring that debtors repay the maximum they can afford, and preventing abuse by above median income Chapter 13 debtors.

Debtors also argue that the Plan meets the requirement for confirmation because it complies with section 1325(a)(4) by distributing more to unsecured creditors than they would receive under a Chapter 7 liquidation. The Court notes that § 1325(a)(4) is but one of many requirements for confirmation. Moreover, pursuant to § 1325 (b)(1), when as here, the holder of an unsecured claim objects to confirmation, the Court can not approve the Plan unless the unsecured claim is paid in full, or the Plan provides that *all* of the debtor's projected disposable income to be received in the applicable commitment period is applied to make payments to unsecured creditors. 11 U.S.C. § 1325(b)(1). In this case, the Court finds that Debtor's projected disposable income has not been properly calculated, and therefore the Plan fails to commit all of the Debtors' projected disposable income to be received in the applicable commitment period. Therefore, the Court sustains the Creditor's Amended Objection.

## **CONCLUSION**

For the reasons stated above, the Court finds that the above median income Debtors' projected disposable income is properly calculated using Debtors' Schedule "I" income from which deductions

8

for amounts reasonably necessary to be expended are the Debtors' Means Test expenses pursuant to Line 57 of Debtors' Form B22C, rather than expenses as reported on Debtors' Schedule "J". Thus, the Debtors' Chapter 13 Plan must provide for payments of $1,093.99 per month for sixty months.

## ORDER

The Court, having reviewed the submissions of the parties, the applicable law, having heard the argument of counsel, and being otherwise fully advised in the premises, does hereby

**ORDER AND ADJUDGE** that:

1. Creditor's Amended Objection is **SUSTAINED**. Debtors' Plan (C.P. #19) is **NOT APPROVED** for confirmation.

2. The Debtors shall have ten days from entry of this order to file an Amended Chapter 13 Plan that commits all of the Debtors' projected disposable income as that term is interpreted herein.

3. The evidentiary hearing set before the Honorable Paul G. Hyman on December 26, 2007 is **CANCELED.**

###

Copies furnished to:

Brian Cohen, Esq.

Martin Sandler, Esq.

Robin Weiner, Chapter 13 Trustee

AUST